FILED

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA            DEC 20  AM 10: 21
MIDDLE DIVISION
U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| PHYLLIS HOWELL, | ) |
| Plaintiff, | ) |
| vs. | ) CV-99-PT-1842-M |
| QUORUM HEALTH GROUP, INC., and CONTINENTAL CASUALTY COMPANY, | ) |
| Defendants. | ) |

ENTERED

DEC 20 1999

## MEMORANDUM OPINION

This cause comes to be heard on Plaintiff Phyllis Howell's ("Howell" or "plaintiff") motion for summary judgment against both Quorum Health Group, Inc. ("Quorum") and Continental Casualty Company ("CNA") (together as "Defendants") on her claim for long term disability ("LTD") benefits under the Employee Retirement Income Security Act ("ERISA") of 1974 , 29 U.S.C. § 1132(a)(1)(B), filed November 8, 1999.

## FACTS

The facts are apparently undisputed. Plaintiff is a forty-four year old registered nurse who has worked for Quorum and its predecessor for twenty-three years. Plaintiff worked as a Charge Nurse in the hospital's Labor and Delivery department three days a week, 12 hours a day. Effective January 1, 1995, Howell gained insurance coverage under an LTD plan provided by Quorum to its employees (the "Contract"). CNA is the claims administrator, and Quorum is the

1

plan administrator. CNA has discretionary authority to determine eligibility for benefits under its policy, to interpret the policy, and to decide claims and appeals under the policy.

Plaintiff began experiencing excruciating headaches, neck pain, shoulder pain, and severe fatigue in September, 1996. Plaintiff was first treated for those ailments in January, 1998, by Dr. Lisa Oestreich. Plaintiff discontinued working due to her physical condition on January 28, 1998.

The Contract defines "Total Disability" as follows:

"Total Disability" means that during the Elimination Period and the Insured Employee Occupation Period shown in Statement 4 of the Application, the Insured Employee because of Injury or Sickness, is:

> (1) continuously unable to perform the substantial and material duties of his regular occupation;
>
> (2) under the regular care of a licensed physician other than himself; and
>
> (3) not gainfully employed in any occupation for which he is or becomes qualified by education, training or experience.

CNA interprets Total Disability to mean that long term disability benefits are payable under the Contract if an individual is (1) continuously unable to perform the substantial and material duties of her occupation; (2) under the regular care of a physician; and (3) not gainfully employed in any occupation for which she is qualified by education, training, or experience. CNA uses medical documentation to determine the severity and functionality of the claimed disability and also to validate the claim.

Dr. Oestreich submitted to CNA a physician's statement on June 9, 1998, stating that plaintiff suffered from generalized weakness, headaches, and headaches with nausea, and enclosing plaintiff's medical records. She further stated that plaintiff was "unable to work due to

chronic fatigue." The form indicated that plaintiff was expected to return to work in one year or on June 3, 1999. The medical records included an EEG report, a bone scan, an MRI of the lumbar spine, and other laboratory reports.

CNA received plaintiff's claim for LTD benefits on June 22, 1998.

On June 29, 1998, Leslie Johnson, a claims examiner with CNA, conducted a telephone interview with plaintiff. During this phone conversation, plaintiff informed Ms. Johnson that she had worked three twelve-hour shifts per week, for a total of thirty-six hours; that she was being treated by Dr. Oestreich for Trigeminal Nueralgia and Chronic Fatigue; that she feels like she has a severe case of the flu; and that she has very little energy and tires extremely easily.

On July 16, 1998, Diane Novak, a registered nurse for CNA, recommended that Howell's claim be denied due to a lack of objective evidence of a disabling condition. Her recommendation was based on her review of the objective medical records included in Dr. Oestreich's report, all of which were either within normal limits or essentially within normal limits. Also on July 16, 1998, CNA requested in writing that Dr. Oestreich provide CNA with "a clinical summary of [plaintiff's] condition and list the type and frequency of her headaches as well as your treatment plan." However, Dr. Oestreich was out of the office for some time and did not respond to the letter.

By letter, on August 7, 1998, Leslie Johnson denied plaintiff's LTD claim. The denial stated in pertinent part: "The records available for review do not substantiate a disability at a level of severity that would preclude you from performing the substantial and material duties of your occupation as a Registered Nurse." The decision rested heavily on the fact that all medical tests indicated no significant abnormalities in her health. The letter informed plaintiff of her

right to seek reconsideration of CNA's denial through an administrative appeal.

Plaintiff appealed the denial of benefits by letter on August 11, 1998. In that letter, plaintiff, unassisted by counsel, outlined the progression of her physical condition. She discussed the onset of her headaches and upper body pains, her search for a doctor who could diagnose her ailments, her gynecologist's referral of her to Dr. Oestreich, and that Dr. Oestreich diagnosed her with chronic fatigue syndrome when test results returned essentially normal in the face of her symptoms.

On August 24, 1998, CNA acknowledged the appeal letter and invited plaintiff to submit additional evidence of her disability. On October 26, 1998, Dr. Oestreich submitted to CNA additional evidence of Howell's disability in a written report. In her report, Dr. Oestreich stated:

> I am a Neurologist and have been caring for Phyllis Howell since January, 1998 when she was referred for headaches, diffuse myalgis and arthalgias, poor concentration and short term memory loss, poor sleep, and depression. She also has a history of mitral valve prolapse, lumber disc disease and dysautonomia. After my initial evaluation, she was found to be hypertensive and had symptoms of trigeminal neuralgia as a cause of her headaches. She also had diffuse palpable tender nodules throughout and clearly was having cognitive difficulties with poor concentration and short term memory loss. Much of her work up has been unremarkable. However, this is typically the case in patients with Chronic Fatigue Syndrome. She had a positive III-AB 27 antigen which is often associated with various spondyloarthronpathies which may be contributing to her pain. She has a strong family history of this and her brother has ankylosing spondylitis.
>
> Despite some overall improvement, Phyllis remains markedly debilitated in comparison to how she was one year ago making it impossible for her to continue to work. She has attempted this on several occasions. However, this has been extremely fatiguing and then provokes worsening pain, fatigue and periods of confusion.
>
> I would like to recommend that she receive Disability on behalf of her medical condition. If you have any further questions, please do not hesitate to contact me.

On November 12, 1998, the CNA Appeals committee, by letter, denied plaintiff's claim, stating:

> All of your test results and laboratory findings have been, overall, within normal limits. There is no objective medical clinical findings or test results to support that you have been continuously totally disabled from your regular occupation throughout the 150 day elimination period from 02/02/98 through 07/01/98 and thereafter. The peripheral nerve conduction report dated 10/09/98 does not support that you have been continuously disabled from your occupation of a registered nurse since 02/02/98.

On January 28, 1999, plaintiff's attorney requested a copy of CNA's file and requested that CNA allow additional time for plaintiff to submit additional evidence in support of her LTD claim. On Febraury 18, 1999, CNA forwarded plaintiff's file to her attorney, and informed him that plaintiff had exhausted all administrative options offered by CNA's appeals process. On March 8, 1999, plaintiff's attorney submitted an additional letter from Dr. Oestreich which stated that plaintiff was "severely disabled by her condition and will never be able to return to work in any capacity." On March 15, 1999, plaintiff's attorney submitted to CNA a Social Security questionnaire completed by Dr. Oestreich showing total disability of Plaintiff beginning January 28, 1999. On October 28, 1999, the Social Security Administration decided that Howell "is entitled to a period of disability..."

## SUMMARY JUDGMENT STANDARD

Summary judgment may be granted based upon facts developed during the administrative proceedings, the pleadings, discovery, and supplemental affidavits if together, they show that there is no genuine issue as to any material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322-323 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The

party moving for summary judgment bears the initial burden of explaining the basis of his motion. Id. The non-moving party then bears the burden of showing that there are specific facts demonstrating that there is a genuine issue of fact for trial. Id. at 324. The trial court must resolve all reasonable doubts in favor of the non-moving party, but need not resolve all doubts in a similar fashion. Barnes v. Southwest Forest Indus., Inc., 814 F.2d 607, 609 (11th Cir. 1987).

## STANDARD OF REVIEW

A denial of benefits under an ERISA insurance plan must be reviewed de novo "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for the benefits or to construe the terms of the plan." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). If discretionary authority is present, the arbitrary and capricious standard applies. Jett v. Blue Cross and Blue Shield of Alabama, Inc., 890 F.2d 1137, 1139 (11th Cir. 1989). The Eleventh Circuit uses the arbitrary and capricious standard interchangeably with the abuse of discretion standard. Id. "Application of the arbitrary and capricious standard requires [a court] to look only to the facts known to the administrator at the time the decision was made to deny [the claimant] coverage." Lee v. Blue Cross/Blue Shield of Alabama, 10 F.3d 1547, 1550 (11th Cir. 1994), citing Jett, 890 F.2d at 1139. From this record, a court first determines whether the claimant has offered a sound or reasonable interpretation of the plan to rival the insurance company's interpretation. Lee, 10 F.3d at 1550, citing Brown v. Blue Cross & Blue Shield of Alabama, Inc., 898 F.2d 1556, 1570 (11th Cir. 1990). If the claimant's interpretation is sound, the court must then evaluate whether the insurance company was arbitrary and capricious, or abused its discretion, in adopting a different interpretation. Id. "Where no conflict of interest is present, a claims administrator's wrong but reasonable

interpretation will not be found arbitrary and capricious." Florence Nightingale Nursing Service, Inc. v. Blue Cross/Blue Shield of Alabama, 41 F.3d 1476, 1481 (11th Cir. 1995).

However, if the administrator of the plan has a conflict of interest, its interpretation is entitled to less deference. Godfrey v. BellSouth Telecommunication, Inc., 89 F.3d 755, 758 (11th Cir. 1996), citing Brown, 898 F.2d at 1566.

> Conflicts arise when a fiduciary or administrator pays benefits to participants and beneficiaries from its own assets; an example is an insurance company administering an ERISA plan that the company also insures. See Brown, 898 F.2d at 1561. In that situation, the insurance company's role as administrator "lies in perpetual conflict with its profit making role as a business." Id.

Cagle v. Bruner, 112 F.3d 1510, 1516 (11th Cir. 1997).

> [A] wrong but apparently reasonable interpretation is arbitrary and capricious if it advances the conflicting interest of the fiduciary at the expense of the affected beneficiary or beneficiaries unless the fiduciary justifies the interpretation on the ground of its benefit to the class of all participants and beneficiaries.

Brown, 898 F.2d at 1566. Whether the fiduciary's interpretation is "wrong" is determined based on a de novo review of the record. Godfrey, 89 F.3d at 758, citing Brown at 1566, n.12.

> The Eleventh Circuit simplified this discussion considerably when it stated:
>
> Therefore, we have three standards of review for plan interpretations: (1) de novo, applicable where the plan administrator is not afforded discretion; (2) arbitrary and capricious where the plan administrator possesses discretion; and (3) heightened arbitrary and capricious where there is a conflict of interest.

Marecek v. BellSouth Telecommunications, Inc., 49 F.3d 702, 705 (11th Cir. 1995).

In this case, both sides acknowledge that CNA has discretionary authority to determine the eligibility for the benefits and to construe the terms of its plan. Section 7.4 of the Welfare Benefit Plan document states in pertinent part: "The Company ... and the Administrator ... have the discretionary authority to determine eligibility for benefits, to interpret the Plan, and to

7

decide claims under the terms of the Plan." Additionally, there is a conflict of interest as CNA both has the discretionary authority to award benefits and is responsible for the payment of those benefits. Therefore, the heightened arbitrary and capricious standard applies. Thus, this court must determine whether CNA's interpretation of the plan was wrong based on a de novo review of the record. If it is both wrong and reasonable, then this court should consider the conflict of interest. If it is both wrong and unreasonable, then there is no need to explicitly consider the conflict of interest.

## DISCUSSION

Plaintiff asserts that CNA has not utilized its own definition for total disability in the LTD policy by requiring "objective evidence" of a disabling condition. Plaintiff argues that "objective evidence" is required nowhere in the LTD plan and that when new policy requirements are imposed for coverage, the decision to do so is arbitrary and capricious.[1] Plaintiff further contends that CNA abused its discretion by refusing to consider additional

---

[1] To restate, the Contract defines "Total Disability" as follows:
"Total Disability" means that during the Elimination Period and the Insured Employee Occupation Period shown in Statement 4 of the Application, the Insured Employee because of Injury or Sickness, is:

  (1) continuously unable to perform the substantial and material duties of his regular occupation;

  (2) under the regular care of a licensed physician other than himself; and

  (3) not gainfully employed in any occupation for which he is or becomes qualified by education, training or experience.

CNA uses medical documentation to determine the severity and functionality of the claimed disability and also to validate the claim.

evidence of her disability subsequent to the internal appeals process. Finally, plaintiff contends that because Chronic Fatigue Syndrome ("CFS") routinely lacks objective evidence, to deny coverage on this basis with this disease is particularly arbitrary and capricious.

Defendants assert that a finding of Total Disability under the terms of the Contract turns upon a determination, based on objective medical evidence, than an insured has a medical condition that continuously prevents the person from working. Defendants argue that this interpretation of the Total Disability provision is absolutely correct. Defendants contend that plaintiff has not offered an alternative interpretation of the plan, but rather only asserts that CNA's application of the plan was arbitrary and capricious.

The National Institute of Health, in a pamphlet on CFS published for physicians, states that CFS is difficult to diagnose because of its "nonspecific symptoms," including "debilitating fatigue and flu-like symptoms such as pharyngitis, adenopathy, low-grade fever, myalgia, arthralgia, headache, difficulty concentrating, and exercise intolerance." Sansevera v. E.I. Dupont de Nemours & Co., Inc., 859 F. Supp. 106, 113 (S.D.N.Y. 1994). The pamphlet goes on to state that CFS cannot yet be conclusively diagnosed through any specific laboratory test, and that physicians attempting to diagnose CFS should look to the above symptoms. Id. "[T]here is no 'dipstick' laboratory test for chronic fatigue syndrome." Sisco v. Sullivan, 10 F.3d 739, 744 (10th Cir. 1993). CFS is considered an exclusion disease, which requires a physician to rule out other clinically determined causes of the patient's ailments. See Gawrysh v. CNA Ins. Co., 8 F. Supp. 2d 791, 794 (N.D. Ill. 1998). Under the guidelines established by the CDC in 1988, a patient may be diagnosed with CFS if eight of the following symptoms persist or recur for at least six months: chills or low grade fever, sore throat, joint pain, muscle pain, extreme fatigue,

neurological problems such as confusion or memory loss, headaches, sleep disorders, tender lymph nodes, muscle weakness, or a sudden onset of symptoms. Mitchell v. Eastman Kodak Co., 910 F. Supp. 1044, 1051 (M.D. Penn. 1995). CFS is, at this point, a recognized disease which shirks objective medical evidence. "[A]n extended medical history of 'nothing-wrong' diagnoses is not unusual for a patient ultimately found to be suffering from the disease." Sisco, 10 F.3d at 745.

The facts and issues in this case are almost identical to those in Gawrysh. In that case, the plaintiff was diagnosed with CFS and had an extensive history of chronic sinusitis, but was denied long term disability benefits under the same CNA benefit plan which is at issue here because "CNA found [that] the objective medical documentation did not support Ms. Gayrysh's claim that she was 'continuously unable to perform the substantial and material duties of [her] regular occupation.'" 8 F. Supp. 2d at 793. District Court Judge Bucklo stated:

> The uncontroverted evidence indicates Ms. Gawrysh's symptoms were debilitating and were consistent with a diagnosis of Chronic Fatigue Syndrome. Rather than punishing Ms. Gawrysh for the inability of medicine to specifically pinpoint the cause of her debilitating fatigue, CNA should have hired experts or used its own doctors to examine Ms. Gawrysh to determine the cause and degree of her fatigue. CNA simply denied benefits.

Id. at 794. The court found that CNA acted arbitrarily and capriciously in finding that Gawrysh was continuously able "to perform the substantial and material duties of [her] regular occupation." Id. at 796.

Similarly, in Clausen v. Standard Ins. Co., 961 F. Supp. 1446 (D. Colo. 1997), the plaintiff suffered from CFS as well as "sick building syndrome," but was denied long term insurance benefits because of a lack of objective medical evidence and a hired investigator's

10

observations of the plaintiff running errands one day. The plaintiff contended that her own treating physicians opinion and records were ignored or improperly discounted. The judge agreed with Clausen, stating that "the lack of 'objective' medical evidence to 'prove' Clausen was disabled by her fatigue or pain cannot constitute substantial evidence that Clausen was not disabled, i.e., that she was capable of full-time work." Id. at 1457. The court concluded in finding that the defendant's decision to deny Clausen long term disability benefits under the insurance plan was arbitrary and capricious.

In Mitchell v. Eastman Kodak Co., 910 F. Supp. 1044 (M.D. Penn. 1995), the plaintiff was diagnosed with CFS based primarily upon his extreme fatigue, although various medical tests revealed nothing out of the ordinary. In discussing CFS, the court stated that "[i]t is, in fact, the absence of any definable pattern that makes the illness disabling ... Those symptoms, i.e. the inability to complete, the unpredictable onset of extreme fatigue and marked difficulty in concentrating would have made it impossible then, just as it does now, for him to maintain gainful employment." Id. at 1053. Because the defendant insurance company offered no evidence to counter plaintiff's proof, but rather merely attacked the sufficiency of plaintiff's evidence of his disability, the court held that the plaintiff did qualify for long term disability benefits. Id. at 1054.

There are numerous other cases which deal with the difficulties surrounding LTD benefits and Chronic Fatigue Syndrome. See, e.g., Sansevera v. DuPont, 859 F. Supp. 106 (S.D.N.Y. 1994) (denial of benefits for CFS arbitrary and capricious); Friedrich v. Intel Corp., 181 F.3d 1105 (9th Cir. 1999) (summary judgment in favor of insured diagnosed with CFS and chemical/pesticide toxicity affirmed); DuMond v. Centex Corp., 172 F.3d 618 (8th Cir. 1999)

(insured diagnosed with CFS not entitled to LTD benefits where patient's own medical records supported the conclusion that cause of illness was not CFS but an immune suppression from a dental source which had subsequently been cured); <u>Dew v. Metropolitan Life Ins. Co.</u>, __ F. Supp. 2d __, 1999 WL 965602 (S.D. Tex. Sept. 17, 1999) (substantial evidence supported administrator's denial of LTD benefits to insured with CFS where the insured was able to continue with gainful employment for years after her CFS diagnosis).

In this case, the evidence before CNA at the time of its administrative review included the following pertinent documents and information:[2]

(1) Social Security Questionnaire from Dr. Oestriech stating the onset of Howell's disability as January 28, 1998; expecting a life long disability; describing symptoms as (1) poor cognition, including short term memory loss, word finding problems, poor concentration with confusion; (2) chronic disabling fatigue/exhaustion; (3) diffuse pain; (4) headaches; (5) trigeninal neuralgia; (6) sleep disturbances; and (7) mitral valve pro. with dysautonomia.

(2) A letter from Dr. Oestriech dated February 22, 1999, stating that Howell's symptoms meet the CDC criteria for CFS, and that "Mrs. Howell was a hard working, energetic nurse at our local hospital who has been severely effected by her disease. Her activities of daily living are significantly limited to only a few hours where she can perform mild activity before she becomes markedly fatigued with disabling pain from her myalgias. Her limited cognitive symptoms also interferes with her abilities to function.... I believe that Mrs. Howell is severely disabled by her

---

[2] Def. Ex. 1-B.

12

condition and will never be able to return to work in any capacity."[3]

(3) A letter from plaintiff's attorney requesting an additional 90 days to submit additional evidence in support of her LTD claim, and voicing concern that the November 12, 1998 denial letter made no reference to an additional statement from Dr. Oestriech.

(4) A letter from Dr. Oestriech dated October 26, 1998, stating plaintiff's symptoms as headaches, diffuse myalgias and arthralgias, poor concentration and short term memory loss, poor sleep, depression, and fatigue.

(5) Dr. Oestreich's statement that plaintiff suffered from generalized weakness, headaches, and headaches with nausea; that plaintiff was unable to work due to chronic fatigue; and that plaintiff should be able to return in approximately one year.

(6) Various medical test results indicating essentially normal findings.

CNA based its decision to deny LTD benefits to Howell based primarily on (6) above: a lack of objective medical evidence, i.e. tests which conclusively determine that something is definitely wrong, despite the fact that based on all other evidence, plaintiff fulfilled CNA's own definition of Totally Disabled. This court cannot say that it is unreasonable to look to objective medical evidence in considering whether an insured is entitled to LTD benefits generally. However, it is an abuse of discretion and unreasonable to look solely to objective medical evidence when determining whether an insured suffers from a recognized debilitating disease which is commonly known to defy quick and easy diagnosis, which has no "dipstick" test, and

---

[3] While defendants include (1) and (2) in their evidence as being in the record, these two were submitted after the conclusion of the appeals process and thus will not be considered by this court.

13

which regularly baffles physicians by its impairing symptoms in light of unremarkable medical test results.

Defendants assert that this case is not about whether Howell has or had CFS, but whether she was able to work during the Elimination Period (February 2, 1998 - July 1, 1998). Defendants claim that the objective medical evidence presented to them did not support the conclusion that she could not work during that time frame. This is a distinction of no matter. Defendants argue that they want hard evidence of an inability to work, i.e. objective medical evidence. As previously discussed, sufferers of CFS regularly cannot provide that type of evidence. However, that does not necessarily translate into an ability to work.

Furthermore, CNA abused its discretion in cutting off Howell's access to the review process by allowing no new information to be brought to light. As the Eleventh Circuit has noted:

> [S]ince a defendant's duty to provide benefits "is a continuing one, its refusal to provide benefits is thus a continuing denial, the propriety of which is measured against the information available from time to time." ... "Should [the beneficiary] wish to present additional information that might affect the determination of eligibility for benefits, the proper course would be to remand to [the plan administrator] for a new determination." 890 F.2d at 1140.

Shannon v. Jack Eckerd Corp., 113 F.3d 208, 210 (11th Cir. 1997).

Based on the evidence before it, this court is satisfied that CNA acted arbitrarily and capriciously in basing its denial solely on the lack of objective evidence. In other words, CNA's interpretation of the plan was both wrong and unreasonable, as discussed above. The court would not be presently inclined to change that opinion at trial. However, because of the fact that others might see the summary judgment issue differently, caution dictates that the plaintiff's

14

motion be denied and the case set for trial. A trial may be avoided through stipulated facts.

This 20th day of December, 1999.

ROBERT B. PROPST
SENIOR UNITED STATES DISTRICT JUDGE

15